352 S.E.2d 66

**The DAILY GAZETTE CO., INC., etc.**

v.

**The WEST VIRGINIA BOARD OF MEDICINE.**

**No. 16826.**

Supreme Court of Appeals of West Virginia.

Dec. 10, 1986.

---

Raymond G. Dodson, Charleston, for appellant.

George G. Guthrie, Joseph J. Miller, Spilman, Thomas, Battle & Klostermeyer, Charleston, for amicus curiae.

Rudolph L. diTrapano, Rebecca A. Baitty, Charleston, for appellee.

MILLER, Chief Justice:

The West Virginia Board of Medicine (hereinafter the Board) appeals from a judgment of the Circuit Court of Kanawha County granting declaratory and injunctive relief in favor of the the Daily Gazette Company, Inc., and the Daily Mail Publishing Company (hereinafter the Newspapers). The circuit court declared several sections of the West Virginia Medical Practice Act, W.Va.Code, 30–3–1 through –17 (1980),[1] and one provision of the statute relating to

---

1. The circuit court nullified W.Va.Code, 30–3–6 (1980), which provides as relevant here: "Meetings of the board shall be held in public session, except that ... disciplinary proceedings shall be held in closed sessions, unless the party subject to discipline requests that the hearing be held in public session." The circuit court also invalidated subsections (g), (h), (i), and (j) of W.Va. Code, 30–3–9 (1980), which provide:

Health Care Peer Review Organizations, W.Va.Code, 30-3C-1 through -3 (1980),[2] unconstitutional in reliance on this Court's decision in *Daily Gazette Co. v. Committee on Legal Ethics of the West Virginia State Bar*, 174 W.Va. 359, 326 S.E.2d 705 (1984) (hereinafter *State Bar*). The provisions struck down by the circuit court generally provide that the reports and records

"(g) Any reports, information or records received and maintained by the board pursuant to this article, including any such material received or developed by the board during any investigation or hearing, shall be strictly confidential. The board may only disclose any such confidential information in the following circumstances:

"(1) In an examination or *disciplinary hearing* sanctioned by the board or in any subsequent trial or appeal of a board action or order;

"(2) To physician or podiatrist licensing or disciplinary authorities of other jurisdictions, *medical peer review committees*, hospital governing bodies or other hospital or medical staff committees located within or outside this state which are concerned with granting, limiting or denying a physician or podiatrist hospital privileges: *Provided*, That the board shall include along with any such disclosure an indication as to whether or not such information has been substantiated;

"(3) Pursuant to an order of a court of competent jurisdiction; and

"(4) To qualified personnel for bona fide research or educational purposes, if personally identifiable information relating to any patient or physician is first deleted.

"(h) Orders of the board, except for private reprimands, relating to disciplinary action against a physician or podiatrist are public information.

"(i) Confidential information received, maintained or developed by the board or disclosed by the board to others as provided for in this article shall not under any circumstances be available for discovery or court subpoena or be introduced into evidence in any medical malpractice suit or other action for damages arising out of the provision of or failure to provide health care services.

"(j) Any person who discloses confidential information possessed by the board in violation of the provisions of this article is guilty of a misdemeanor, and, upon conviction thereof, shall be fined not more than one thousand dollars, or imprisoned in the county jail not more than one year, or both fined and imprisoned."

W.Va.Code, 30-3-14(h) (1980), which was also invalidated, provides as material here: "Except for private reprimands, the board shall make all its final actions public."

of the Board and of peer review committees are strictly confidential and immune from discovery. The circuit court prospectively enjoined the Board from withholding any disciplinary files compiled after July 3, 1985, relating to the professional malpractice or incompetence of any physician, podiatrist, or physician's assistant subject to licensure by the Board.

2. The confidentiality provision of the peer review statute, W.Va.Code, 30-3C-3 (1980), struck down by the circuit court, provides in its entirety:

"The proceedings and records of a review organization shall be confidential and privileged and shall not be subject to subpoena or discovery proceedings or be admitted as evidence in any civil action arising out of the matters which are subject to evaluation and review by such organization and no person who was in attendance at a meeting of such organization shall be permitted or required to testify in any such civil action as to any evidence or other matters produced or presented during the proceedings of such organization or as to any findings, recommendations, evaluations, opinions or other actions of such organization or any members thereof: *Provided*, That information, documents or records otherwise available from original sources are not to be construed as immune from discovery or use in any civil action merely because they were presented during proceedings of such organization, nor should any person who testifies before such organization or who is a member of such organization be prevented from testifying as to matters within his knowledge, but the witness shall not be asked about his testimony before such an organization or opinions formed by him as a result of said organization hearings: *Provided, however*, That an individual may execute a valid waiver authorizing the release of the contents of his file pertaining to his own acts or omissions, and such waiver shall remove the confidentiality and privilege of said contents otherwise provided by this section: *Provided further*, That upon further review by any other review organization, upon judicial review of any finding or determination of a review organization or in any civil action filed by an individual whose activities have been reviewed, any testimony, documents, proceedings, records and other evidence adduced before any such review organization shall be available to such further review organization, the court and the individual whose activities have been reviewed. The court shall enter such protective orders as may be appropriate to provide for the confidentiality of the records provided the court by a review organization and all papers and records relating to the proceedings had before the reviewing court."

This dispute arose in early 1985 after an investigative reporter for one of the Newspapers .requested information from the Board under West Virginia's Freedom of Information Act, W.Va.Code, 29B–1–1 through –6 (F.O.I.A.). The Board by way of a letter from its executive director refused on the basis that W.Va.Code, 30–3–9, prohibited disclosure and that the information thus fell within an exemption under W.Va.Code, 29B–1–4 of the F.O.I.A.[3]

In response to the Board's refusal to disclose any of the information requested, the Newspapers filed a complaint and then an amended complaint, seeking a declaration that the confidentiality provisions of the Medical Practice Act were unconstitutional and an order enjoining the Board from withholding the information requested. The circuit court granted declaratory and injunctive relief on a prospective basis, but granted a sixty-day stay of its order to permit the Board to perfect an appeal.

We recognized in *State Bar* that the public has a constitutional right of access to attorney disciplinary proceedings and held in Syllabus Point 4 that: "Under West Virginia Constitution art. III, § 17, which provides that 'The courts of this State shall be open,' there is a right of public access to attorney disciplinary proceedings."

The Board argues that the *State Bar* decision does not extend the same right of public access to physician disciplinary proceedings on the theory that our decision was premised entirely upon the constitutional right of access to the courts. Because the Board is not a part of this State's judicial system, it argues the *State Bar* decision is simply inapplicable to it. We disagree.

We believe the Board misperceives the rationale of our holding in *State Bar* where we indicated that the constitutional right of access is not limited to formal judicial proceedings: [4]

"This fundamental constitutional right of access is not limited to formal trials, but extends to other types of judicial and quasi-judicial proceedings. For example, in [*State ex rel. Herald Mail Co. v. Hamilton,* 165 W.Va. 103, 116–17, 267 S.E.2d 544, 551 (1980) ], this Court recognized a public right of access to pretrial hearings in criminal cases. *See also Press-Enterprise Co. v. Superior Court,* 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) (first amendment right of access to pretrial voir dire); *Sentinel Star Co. v. Edwards,* 387 So.2d 367 (Fla.App. 1980) (common law right of access to posttrial hearing concerning juror interview); *Herald Co. v. Weisenberg,* 89 A.D.2d 224, 455 N.Y.S.2d 413 (1982), *aff'd,* 59 N.Y.2d 378, 465 N.Y.S.2d 862, 452 N.E.2d 1190 (1983) (right of access to unemployment compensation hearing); *In re Estate of O'Connell,* 90 Misc.2d 555, 394 N.Y.S.2d 816 (1977) ('open courts' statute requires examination of witness in will contest in surrogate's court to be public proceeding); *In re Petition of Daily Item,* 310 Pa.Super. 222, 456 A.2d 580 (1983) (right of access to preliminary hearings based upon 'open courts' provision); *Cohen v. Everette City Council,* 85 Wash.2d 385, 535 P.2d 801 (1975) ('open courts' provision held to preclude sealing of transcript of city council's license revocation proceeding by court that reviewed transcript on appeal); *State ex rel. La Crosse Tribune v. Circuit Court,* 115 Wis.2d 220, 340 N.W.2d 460 (1983) ('open courts' statute applied

---

**3.** W.Va.Code, 29B–1–4, provides: "The following categories of information are specifically exempt from disclosure under the provisions of this article: ... (5) Information specifically exempted from disclosure by statute."

**4.** As the circuit court recognized in its letter opinion, this Court in note 6 of *State Bar,* 174 W.Va. at 363, 326 S.E.2d at 705, stated as follows:

"While not before this Court in the immediate proceeding, we note that parallel provisions concerning professional discipline of physicians and podiatrists appear to impose similar restrictions upon public disclosure and access. *See* West Virginia Code §§ 30–3–6; 30–3–9(g), (h), (i) & (j); 30–3–14(h) (1984 Supp.). These restrictions are present in spite of the Legislature's declared purpose for enacting the Medical Practice Act—'to protest the public interest.' West Virginia Code § 30–3–1 (1984 Supp.). *See also* West Virginia Code § 30–3C–3 (1984 Supp.)."

to voir dire proceedings)." 174 W.Va. at 364, 326 S.E.2d at 710–11. (Footnote omitted).[5]

All participants in this appeal recognize that the legislature in apparent response to the *State Bar* decision amended the Medical Practice Act in 1986 and substantially opened the medical disciplinary process. This amendment obviates the need for an elaborate discussion of the correctness of the circuit court's opinion involving the 1980 Medical Practice Act on the reach of the constitutional provisions underpinning the *State Bar* decision.[6] Both parties urge that we consider the validity of the amended Medical Practice Act in order to avoid needless further litigation over the question of whether it comports with the principles contained in *State Bar*.

We held in Syllabus Point 5 of *State Bar* that if the Legal Ethics Committee makes a finding that probable cause exists to substantiate an alleged ethical violation, the disciplinary proceedings are then open to the public:

"Where formal disciplinary charges in an attorney disciplinary proceeding are filed, following a determination that probable cause exists to substantiate allegations of an ethical violation, the hearing on such charges shall be open to the public, who shall be entitled to all reports, records, and nondeliberative materials introduced at such hearing, including the record of the final action taken."

The language of the amended statute set out in note 6, *supra,* is substantially similar to our holding in Syllabus Point 5 of the *State Bar* case in that once probable cause is found "to substantiate charges of disqualification, all proceedings on such charges shall be open to the public." W.Va.Code, 30–3–14(*o*) (1986). Thus, we find that this portion of the amended statute is constitutionally correct under the principles of Syllabus Point 5 of *State Bar*. Consequently, we hold that under W.Va. Code, 30–3–14(*o*) (1986), if the Board makes a preliminary determination that probable cause exists to substantiate charges of disciplinary disqualification, all proceedings on such charges shall be open to the public who shall be entitled to all reports, records, and nondeliberative materials introduced at such hearing.

We do find, however, that the amended statute does not meet the *State Bar* standard set out in Syllabus Point 6 with regard to public access where the initial complaint has been dismissed because of the lack of probable cause: "Once a complaint of unethical conduct in an attorney disciplinary proceeding is dismissed for lack of probable cause, the public has a right of access to the complaint and the findings of fact and conclusions of law which are presented in support of such dismissal."

The amended statute places a condition on public access to the complaint and the Board's decision, and grants such ac-

5. First Amendment principles are also relevant here, as indicated in *Landmark Communications, Inc. v. Virginia,* 435 U.S. 829, 98 S.Ct. 1535, 56 L.Ed.2d 1 (1978). There, Landmark Communications was convicted under a Virginia criminal statute prohibiting the disclosure of proceedings before the State Judicial Conduct Commission. It had published an article that accurately reported that an inquiry was pending concerning a particular judge. In reversing the conviction, the Supreme Court stressed that a major purpose of the First Amendment is to protect open discussion of governmental affairs and concluded that the operation of the judicial inquiry commission "no less than the operation of the judicial system itself, is a matter of public interest, necessarily engaging the attention of the news media." 435 U.S. at 839, 99 S.Ct. at 1542, 56 L.Ed.2d at 10–11. *See also Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 585–87, 100 S.Ct. 2814, 2832–33, 65 L.Ed.2d 973, 995–

96 (1980) (Brennan, J., concurring in the judgment).

6. The 1986 version of W.Va.Code, 30–3–14(*o*), now provides, in pertinent part:

"In every case considered by the board under this article regarding discipline or licensure, whether initiated by the board or upon complaint or information from any person or organization, the board shall make a preliminary determination as to whether probable cause exists to substantiate charges of disqualification due to any reason set forth in subsection (c) of this section. If such probable cause is found to exist, all proceedings on such charges shall be open to the public who shall be entitled to all reports, records, and nondeliberative materials introduced at such hearing, including the record of the final action taken."

cess only "if the subject physician or podiatrist consents." [7] To this extent, the amended statute conflicts with the *State Bar* decision and cannot stand.[8] We, therefore, hold that under W.Va.Code, 30–3–14(*o*) (1986), if the Board finds that probable cause does not exist, the public has a right of access to the complaint or other document setting forth the charges, and the findings of fact and conclusions of law supporting the dismissal.

■ We also held in Syllabus Point 7 of *State Bar* that "[t]he right of public access to attorney disciplinary proceedings precludes utilization of [a] private reprimand as a permissible sanction." As noted in note 1, *supra*, the circuit court invalidated a statutory provision authorizing the Board to issue private reprimands. We affirm the circuit court's decision in this regard and note that the 1986 amendments to the Medical Practice Act eliminated private reprimands and W.Va.Code, 30–3–14(i)(2) (1986), now authorizes the Board to "[a]dminister a public reprimand."

We now turn to the issue of whether the confidentiality provision relating to records and proceedings of Health Care Peer Review Organizations, W.Va.Code, 30–3C–3 (1980),[9] are invalid under the *State Bar* decision. The West Virginia Hospital Association (hereinafter the Hospitals) and the Joint Commission on Accreditation of Hospitals,[10] were granted leave to file an amicus curiae brief, to challenge the circuit court's ruling only insofar as it abrogates the confidentiality provision of the peer review statute. The Hospitals contend that it was not necessary to declare the confidentiality provisions unconstitutional in order to protect the public interest in full access to the physician disciplinary process because to the extent that peer review materials are actually brought into a disciplinary hearing, they are not confidential. They assert that the circuit court and the parties have failed to understand the distinction between access to records of disciplinary proceedings before the Board and the records and proceedings at the peer review level.

Peer review records and proceedings, the Hospitals assert, should remain privileged under the statute, unless the Board finds probable cause for disciplinary action based, in whole or in part, on evidence generated at the peer review level. At this point, the peer review records lose their character as peer review records, become records of the Board, and lose their confidential and privileged status. The Hospitals also advance the public policy argument that the interests served by protecting the confidentiality of peer review records and proceedings clearly outweigh the public's interest in access to such materials.

We agree that the circuit court should not have wholly invalidated the statutory privilege for peer review committee proceedings. Although the peer review law

---

**7.** The pertinent portion of W.Va.Code, 30–3–14(*o*) (1986), provides:

> "If a finding is made that probable cause does not exist, the public has a right of access to the complaint or other document setting forth the charges, the findings of fact and conclusions supporting such finding that probable cause does not exist, *if the subject physician or podiatrist consents to such access.*" (Emphasis added).

**8.** We have frequently utilized the doctrine of the least intrusive remedy to invalidate a portion of a statute which is found to be constitutionally deficient rather than strike the entire statute. *E.g., State ex rel. Longanacre v. Crabtree,* 177 W.Va. 132, 350 S.E.2d 760 (1986); *Don S. Co., Inc. v. Roach,* 168 W.Va. 605, 613, 285 S.E.2d 491, 496 (1981); *State ex rel. Whitman v. Fox,* 166 W.Va. 633, 642–43, 236 S.E.2d 565, 571 (1977); *State ex rel. Alsop v. McCartney,* 159

W.Va. 829, 838–40, 228 S.E.2d 278, 283–84 (1976).

**9.** *See* note 2, *supra,* for full text.

**10.** The Joint Commission on Accreditation of Hospitals, with headquarters in Chicago, Illinois, establishes standards and conducts voluntary accreditation programs for West Virginia hospitals, psychiatric facilities, mental health services, long-term care facilities, ambulatory health care facilities, and hospice programs. The Joint Commission joined in one portion of the amicus brief to emphasize that confidentiality is essential to an effective peer review process. The Joint Commission argues that confidentiality encourages participation and the free flow of information in the peer review process, a process which, it maintains, is a critical component in the delivery of quality and efficient health care.

does not contain any legislative findings of fact or any statement of legislative intent, it seems evident that the legislature enacted these provisions with the ultimate purpose of improving the quality of medical care provided in the hospitals of this State. The confidentiality provision was undoubtedly placed in the peer review law for the same reason that most other states have created some type of privilege protecting peer review proceedings from disclosure.[11]

One of the better discussions concerning the reason why state legislatures generally protect peer review proceedings from disclosure is contained in *Jenkins v. Wu*, 102 Ill.2d 468, 468 N.E.2d 1162 (1984). The issue in that case arose during the discovery phase of a medical malpractice claim. The plaintiffs contended that the statute denied them equal protection because they could not discover the peer review records, but a physician whose staff privileges had been limited or revoked was permitted by the statute to obtain such records. In rejecting the plaintiffs' constitutional arguments, the Supreme Court of Illinois explained the purpose of peer review privilege legislation:

"[T]he purpose of this legislation is not to facilitate the prosecution of malpractice cases. Rather, its purpose is to ensure the effectiveness of professional self-evaluation, by members of the medical profession, in the interest of improving the quality of health care. The Act is premised on the belief that, absent the statutory peer-review privilege, physicians would be reluctant to sit on peer-review committees and engage in frank evaluations of their colleagues." 102 Ill.2d at 479–80, 468 N.E.2d at 1168–69.[12]

We believe the confidentiality of the peer review statute has little direct impact on the disciplinary procedures of the Board. The peer review procedure is not ordinarily designed to generate disciplinary proceedings. As the Hospitals concede, where peer review records are brought into disciplinary proceedings, they become records of the Board and are available for public disclosure once the probable cause threshold is passed.

The confidentiality issue is thus resolved by according confidentiality to the peer review procedure and permitting public access to the extent that a peer review record is actually utilized before the Board once probable cause has been found. We, therefore, conclude that the circuit court erred in holding that W.Va.Code, 30–3C–3 (1980), relating to hospital peer review proceedings, was unconstitutional under Article III, Section 17 of the West Virginia Constitution. To the extent that any hospital peer review information is brought before the West Virginia Board of Medicine under W.Va. Code, 30–3–14(*o* ) (1986), after probable cause to substantiate the charges is found, the public is entitled to such information.

We, therefore, affirm, in part, reverse, in part, and remand for the entry of an appropriate order not inconsistent with this opinion.

Affirmed, in part, Reversed, in part, and Remanded.

**11.** Some forty-five states have enacted legislation placing some limitation on the discovery, disclosure, or evidentiary use of peer review committee reports. Note, *The Missouri Rule: Hospital Peer Review Is Discoverable In Medical Malpractice Cases,* 50 Mo.L.Rev. 459 (1985).

**12.** Much the same thought was echoed in the earlier and leading case of *Bredice v. Doctors Hospital, Inc.,* 50 F.R.D. 249–50 (D.D.C.1970), *aff'd,* 479 F.2d 920 (D.C.Cir.1973):

"'Confidentiality is essential to effective functioning of these staff meetings; and these meetings are essential to the continued improvement in the care and treatment of pa-

tients. Candid and conscientious evaluation of clinical practices is a *sine qua non* of adequate hospital care. To subject these discussions and deliberations to the discovery process, without a showing of exceptional necessity, would result in terminating such deliberations. Constructive professional criticism cannot occur in an atmosphere of apprehension that one doctor's suggestion will be used as a denunciation of a colleague's conduct in a malpractice suit.' 50 F.R.D. 249, 250."

*See also* Note, *Medical Peer Review Protection in the Health Care Industry,* 52 Temple L.Q. 552, 558 (1979).