431 S.E.2d 669

**Catherine YOUNG, Plaintiff Below, Appellant,**

v.

**Joseph SALDANHA, Defendant Below, Appellee.**

**No. 21274.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 19, 1993.

Decided April 23, 1993.

Robert A. Taylor and Barbara Lupton, Masters & Taylor, Charleston, for appellant.

Thomas E. Scarr, Bowles, Rice, McDavid, Graff & Love, Charleston, for appellee.

WORKMAN, Chief Justice:

Catherine Young appeals from a January 17, 1992, order of the Circuit Court of Kanawha County which granted the motion of Appellee Joseph Saldanha for a protective order to prevent discovery of and evidentiary use of various medical peer review records. Having thoroughly reviewed this matter, we conclude that the circuit court was correct in granting the protective order and accordingly affirm the decision of the lower court.

The underlying civil action is a medical malpractice case brought by Appellant, a registered nurse employed by the United States Postal Service, against Dr. Joseph Saldanha, an orthopedic surgeon. The action was filed on November 21, 1989, as the result of a surgical procedure which Dr. Saldanha performed on Appellant's right hand. Appellant first sought treatment from Dr. William Sale, a Charleston orthopedist, in 1988 in connection with pain and stiffness she was experiencing in her right hand and wrist. Due to the fact that Dr. Sale confined his surgical privileges to Charleston Area Medical Center ("CAMC") and because she wished to have her surgery performed at St. Francis, Appellant sought treatment from Dr. Saldanha who had surgical privileges at St. Francis.

On June 20, 1988, Dr. Saldanha performed an excision arthroplasty of the trapezium and the trapezium metacarpal joint with a gelfoam implant on Appellant. In her malpractice action, Appellant alleges that she has suffered permanent injury and disfigurement and will require additional surgery in the future as the result of Dr.

Saldanha's negligent performance of this surgical procedure.

During the discovery stage of the underlying civil action, Appellant learned that Dr. Saldanha's surgery privileges at St. Francis had been restricted and that the hospital had placed him under supervision due to its concern regarding his skills. She similarly learned that Dr. Saldanha had been suspended in 1988 from the medical staff of CAMC following a peer review investigation.[1] Following his suspension from CAMC, Dr. Saldanha initiated a civil action against CAMC and individual physicians in the Kanawha County Circuit Court, alleging that his suspension was motivated by anticompetitive animus. During the course of that civil action, Dr. Saldanha sought and obtained copies of the records submitted in connection with the peer review proceedings. These records were, however, and are still subject to an order placing the entire file under seal due to the confidential nature of the materials included in the file. Through undisclosed means,[2] Appellant obtained copies of these confidential documents pertaining to the CAMC peer review proceedings involving Dr. Saldanha. Appellant contends that these peer review records demonstrate that Dr. Saldanha engaged in a pattern and practice of negligent medical treatment. The peer review documents at issue indisputably involve complaints regarding care and treatment of patients other than Appellant whose medical conditions and surgical procedures are wholly unrelated to those of Appellant.[3]

Following Appellant's indication to seek both discovery of and evidentiary use of trial documents and information relating to the CAMC peer review proceedings involving Dr. Saldanha, Appellee filed a motion for a protective order and a motion in limine to limit and exclude discovery and introduction at trial of the peer review documents. Appellant opposed Appellee's motions and a hearing was held on September 10, 1991, on the motion for protective order.[4] By order entered January 17, 1992, the circuit court granted Appellee's motion for a protective order, finding that the peer review privilege had not been waived by Dr. Saldanha, as contended by Appellant. The circuit court further ruled that the peer review documents were irrelevant for the purposes of the underlying civil action and accordingly not subject to further discovery. It is from that order that Appellant brings this appeal, seeking to nullify the protective order.

Through the enactment of West Virginia Code § 30–3C–3 in 1980, the Legislature imposed confidentiality on all information, documents, and records subjected to review by a medical peer review organization.[5] That provision provides as follows:

The proceedings and records of a review organization shall be confidential and privileged and shall not be subject to subpoena or discovery proceedings or be admitted as evidence in any civil action arising out of the matters which are subject to evaluation and review by such organization and no person who was in attendance at a meeting of such organization shall be permitted or required to testify in any such civil action as to any evidence or other matters produced or presented during the proceedings of such

1. Dr. Saldanha relinquished his medical license and is no longer practicing medicine in this state.

2. During the hearings on Appellee's motion for a protective order, the only explanation offered for how these confidential records were disseminated came through the representations of Appellee's counsel. Reputedly, Jim Peterson, an attorney who was representing a separate plaintiff in a medical malpractice case against Dr. Saldanha, gained access to these records

through some error on the part of the Kanawha County Circuit Clerk's office.

3. The surgical procedure performed by Dr. Saldanha on Appellant has never been the subject of peer review proceedings involving Dr. Saldanha.

4. The circuit court only addressed the protective order motion, presumably reserving its ruling on the motion in limine for a later date.

5. See W.Va.Code § 30–3C–1 (1993) for the definition of a "review organization."

organization or as to any findings, recommendations, evaluations, opinions or other actions of such organization or any members thereof: Provided, That information, documents or records otherwise available from original sources are not to be construed as immune from discovery or use in any civil action merely because they were presented during proceedings of such organization, nor should any person who testifies before such organization or who is a member of such organization be prevented from testifying as to matters within his knowledge, but the witness shall not be asked about his testimony before such an organization or opinions formed by him as a result of said organization hearings: Provided, however, That an individual may execute a valid waiver authorizing the release of the contents of his file pertaining to his own acts or omissions, and such waiver shall remove the confidentiality and privilege of said contents otherwise provided by this section: Provided, further, That upon further review by any other review organization, upon judicial review of any finding or determination of a review organization or in any civil action filed by an individual whose activities have been reviewed, any testimony, documents, proceedings, records and other evidence adduced before any such review organization shall be available to such further review organization, the court and the individual whose activities have been reviewed. The court shall enter such protective orders as may be appropriate to provide for the confidentiality of the records provided the court by a review organization and all papers and records relating to the proceedings had before the reviewing court.

W.Va.Code § 30–3C–3.

This Court recently examined the health care peer review statutes, West Virginia Code §§ 30–3C–1 to –3 (1993), in *State ex rel. Shroades v. Henry*, 187 W.Va. 723, 421

S.E.2d 264 (1992). In that case, a medical malpractice plaintiff sought access to certain materials held by a defendant hospital. *Id.* at 724, 421 S.E.2d at 265. The circuit court had, without examination of the subject documents, entered an order designating the requested records confidential and privileged pursuant to the peer review statutes. *Id.* This Court held, inter alia, that the trial court should have conducted an in camera examination to determine whether the documents in question were privileged. *Id.* at 725–26, 421 S.E.2d at 265–66. We further recognized in syllabus point two that "[t]he determination of which materials are privileged under *W.Va.Code*, 30–3C–1 [1975] *et seq.* is essentially a factual question and the party asserting the privilege has the burden of demonstrating that the privilege applies." 187 W.Va. at 724, 421 S.E.2d at 265.

This case presents issues wholly distinct from those addressed by this Court in *Shroades*. Because Judge Canady did examine the peer review documents at issue [6] prior to making his ruling, we are not faced with the same concern as we were in *Shroades* where the privilege of confidentiality had been granted without any prior inspection to determine if the documents were properly the subject of such a privilege. Instead, we are asked by Appellant to nullify the legislatively-imposed confidentiality of peer review proceedings under the guise of ensuring quality patient care.

Appellant contends that this Court would be effecting an obvious inconsistency if we rule that the peer review information concerning Dr. Saldanha cannot be used as evidence in the underlying malpractice action. The alleged inconsistency presents itself, according to Appellant, because the goal of quality patient care is necessarily defeated if the peer review information is barred from admission. The reasoning upon which Appellant's argument relies, however, is faulty.

6. Appellee implies in his brief that Judge Canady did not inspect each and every one of the subject documents through his representation that substantial portions of the peer review records were attached to Appellant's "Memorandum in Opposition to Defendant's Motions in Limine And Request for Protective Order." We are satisfied, however, that those documents which were examined provided a good representation of the documents as a whole.

West Virginia's peer review statutes, like those enacted throughout this country,[7] were put in force "with the ultimate purpose of improving the quality of medical care provided in ... this State." *Daily Gazette Co. v. West Virginia Bd. of Medicine*, 177 W.Va. 316, 322, 352 S.E.2d 66, 71 (1986). It does not follow, however, as Appellant suggests, that patient care is improved by permitting unrestrained use of peer review records. As we recognized in *Daily Gazette*,

[o]ne of the better discussions concerning the reason why state legislatures generally protect peer review proceedings from disclosure is contained in *Jenkins v. Wu*, 102 Ill.2d 468, [82 Ill.Dec. 382] 468 N.E.2d 1162 (1984).... In rejecting the plaintiffs' constitutional arguments [denial of equal protection because physician subject to peer review proceedings could gain access to records while they could not], the Supreme Court of Illinois explained the purpose of peer review legislation:

'[T]he purpose of this legislation is not to facilitate the prosecution of malpractice cases. Rather, its purpose is to ensure the effectiveness of professional self-evaluation, by members of the medical profession, in the interest of improving the quality of health care. The Act is premised on the belief that, absent the statutory peer-review privilege, physicians would be reluctant to sit on peer-review committees and engage in frank evaluations of their colleagues.'

177 W.Va. at 322, 352 S.E.2d at 72 (quoting *Jenkins v. Wu*, 102 Ill.2d at 479–80, 82 Ill.Dec. at 388–89, 468 N.E.2d at 1168–69).

In *Shroades* we noted that "[t]he peer review privilege represents a legislative choice between medical staff candor and the plaintiff's access to evidence." 187 W.Va. at 727, 421 S.E.2d at 268. The enactment of West Virginia Code §§ 30–3C–1 to –3 clearly "evinces a public policy en-

couraging health care professionals to monitor the competency and professional conduct of their peers in order to safeguard and improve the quality of patient care." *Mahmoodian v. United Hosp. Ctr., Inc.*, 185 W.Va. 59, 65, 404 S.E.2d 750, 756, *cert. denied*, — U.S. —, 112 S.Ct. 185, 116 L.Ed.2d 146 (1991). Appellant chooses to ignore the chilling effect on peer review proceedings which would assuredly follow if we were to adopt her position. *See Cruger v. Love*, 599 So.2d 111, 114–15 (Fla. 1992) ("privilege afforded to peer review committees is intended to prohibit the chilling effect of the potential public disclosure of statements ..."). Thus, Appellant's ostensible goal—that of improving patient care—would in fact be undermined when medical staff lost their willingness to candidly participate in peer review proceedings following an evisceration of the peer review privilege.[8]

Interestingly, the substance of Appellant's argument rests primarily on ostensible public policy concerns of promoting improved care of medical patients. Yet, upon examination, the concerns rooted in public policy actually warrant continued imposition of peer review confidentiality as explained by the Honorable Charles E. King in an order entered in the CAMC litigation:

The Court notes in making these rulings that there are substantial policy considerations in favor of the protection of records and proceedings of peer review organizations. The Court finds that it is in the interest of the public to allow the medical profession to police the activities of its own members through the peer review process and that the protection of the documents and information generated through that process promotes the free exchange of information so that the highest quality of medical care reasonably attainable can be made available to the community. The statute in question, West Virginia Code § 30–3C–1 *et seq.*,

---

7. All fifty states plus the District of Columbia have codified the "peer review" privilege which was generally recognized at common law. *See* 3 Miles J. Zaremski & Louis S. Goldstein, *Medical and Hospital Negligence*, § 44A:07 n. 1 (Callaghan 1990). In general, the privilege prohibits

all records pertaining to peer review proceedings from disclosure, discovery, and use as evidence in a non-peer review setting.

8. *See supra* note 7.

seeks to encourage the free flow of information through the peer review process by preserving the confidentiality of the information and to some extent anonymity of individuals involved in the peer review process. To narrowly construe the statute in the manner requested by the plaintiffs herein would frustrate and defeat the purpose of the statute and, in the opinion of this Court, would have a chilling effect on the process of peer review in institutions throughout the State of West Virginia which would be a detriment ultimately to the health care of the citizens of the State.

The enactment of the peer review statutes represents a legislative realization that self-policing within the medical community is vital. As one commentator has observed:

> Doctors are motivated to engage in strict peer review by the desire to maintain the patient's well-being and to establish a highly respected name for both the hospital and the practitioner within the public and professional communities. However, doctors seem to be reluctant to engage in strict peer review due to a number of apprehensions: loss of referrals, respect, and friends, possible retaliations, vulnerability to torts, and fear of malpractice actions in which the records of the peer review proceedings might be used.

Gregory G. Gosfield, *Medical Peer Review Protection in the Health Care Industry*, 52 Temp.L.Q. 552, 558 (1979) (footnotes omitted). Both commentators and courts alike agree that without the self-evaluation which the peer review privilege both permits and encourages, complaints involving medical care and treatment could not be fully investigated in the preferred manner of voluntary and forthright participation

due to the lurking fears of reprisal and repercussion.

Secondary to her public policy argument, Appellant argues that Dr. Saldanha waived the confidentiality privilege of West Virginia Code § 30–3C–3 by successfully demanding disclosure of the peer review information against him in his lawsuit against CAMC. Appellant suggests that Dr. Saldanha used the peer review proceedings "as a sword" in his action against CAMC and is alternately, "using it as a shield" in this case. We find Appellant's argument on this point specious, at best. Appellant totally ignores the fact that the same statute which clothes peer review proceedings with a cloak of secrecy also directs that the "individual whose activities have been reviewed" "shall" be permitted access to "any testimony, documents, proceeding, records and other evidence adduced before" a peer review organization "in any civil action filed by an individual whose activities have been reviewed." W.Va.Code § 30–3C–3. Dr. Saldanha properly sought and gained access to the CAMC peer review records pursuant to this statutory provision as he obviously qualified as an individual whose activities had been reviewed and further, because he sought such documents in connection with a civil action which he had initiated.

 Appellant maintains, without any authority, that because Dr. Saldanha gained access to his own peer review records he somehow waived the attendant privilege of confidentiality.[9] The peer review statutes fully anticipate waiver by providing that an individual "may execute a valid waiver authorizing the release of the contents of his file." W.Va.Code § 30–3C–3. This provision clearly evidences a legislative intent to require formal action to effect a waiver of peer review confidentiality. By requiring a formally executed

---

**9.** Included as part of the record before this Court are affidavits of two attorneys who represented, respectively, Dr. Saldanha and CAMC in the civil action styled *Saldanha v. CAMC*, No. 88–C–76 (Kanawha County). These affidavits state that during the referenced litigation, five distinct orders were entered for the purpose of protecting information from public disclosure. Additionally, the affiants attest that both parties

to the litigation "consistently transmitted the pleadings to the circuit court with notations that the entire file was under seal." Our review of the record in this case suggests that contrary to Appellant's contentions, Appellee and his counsel in the CAMC litigation, as well as opposing counsel, did everything in their power to preserve the confidentiality of the peer review records that were obtained.

waiver, the Legislature has sought to avoid the inadvertent accomplishment of a waiver, such as that suggested by Appellant in this case. Accordingly, we rule that to effect a waiver of the privilege of confidentiality which attends information and records properly the subject of health care peer review under West Virginia Code §§ 30–3C–1 to –3, the Legislature has required that an individual must formally indicate his intent to waive this confidentiality by executing a valid waiver. The circuit court correctly determined that Dr. Saldanha did not waive the confidentiality of the peer review documents and further, that the peer review records were subject to a protective order based on privilege and confidentiality.[10]

Even if the protective order had been improvidently granted, the peer review information would not be admissible under any of the evidentiary bases through which Appellant proposed to proffer such evidence. First and foremost, as Judge Canady has already ruled, the documents do not meet the axiomatic requirement of relevancy. To be admissible, the peer review records must "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." W.Va.R.Evid. 401; *see* W.Va.R.Evid. 402 (concerning admissibility in general). Given that Appellant's cause of action against Dr. Saldanha is grounded in negligence, the pivotal issue to be resolved at trial is whether Dr. Saldanha breached any duty of care owed to Appellant in connection with his treatment of her. Because it is undisputed that the peer review materials do not involve Appellant or even the same medical procedures which are the subject of the underlying litigation, the peer review materials are necessarily not relevant as such information cannot prove whether or not Dr. Saldanha was negligent in his treatment of Appellant.

We discuss the remaining two evidentiary grounds cited by Appellant for edification purposes only as we have already upheld the circuit court's ruling that the peer

review evidence is inadmissible on grounds of relevancy. Appellant contends that the peer review materials are admissible because they demonstrate a pattern and practice of negligent treatment. Appellant's theory is that because Dr. Saldanha allegedly acted negligently in the cases which were the subject of peer review, therefore he must have similarly committed negligence toward her. The rules of evidence, however, do not permit the advancement of such a theory.

■ West Virginia Rule of Evidence 404(b) provides, in part, that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." While an exception contained within Rule 404(b) permits admission of this type of evidence to prove such elements as motive, opportunity, plan, and identity, this exception is inapposite because none of these elements is necessary to prove the issue of Dr. Saldanha's negligence. Accordingly, even if the peer review materials concerning unrelated surgical procedures and patients were relevant, West Virginia Rule of Evidence Rule 404 would bar the admission of evidence proffered to demonstrate that Dr. Saldanha's treatment of Appellant conformed with prior instances of alleged or proven negligence. *See also Gable v. Kroger Co.,* 186 W.Va. 62, 410 S.E.2d 701 (1991) (upholding exclusion of two prior slip and fall incidents under Rule 404(b) because accidents did not occur under substantially similar conditions); *accord State ex rel. Tinsman v. Hott,* 188 W.Va. 349, 424 S.E.2d 584 (1992) (recognizing that even where pattern and practice evidence is properly admissible, as in sexual harassment cases, such evidence is nonetheless subject to similarity test).

■ The peer review records would also be inadmissible under Rule 406 of the West Virginia Rules of Evidence which provides that "[e]vidence of the habit of a person ... is relevant to prove that the conduct of the person ... on a particular occasion was in conformity with the habit...." This Court has stated that:

---

**10.** Notwithstanding the valid protective order, Appellant is permitted under West Virginia

Code § 30–3C–3 to obtain the information subject to peer review "from original sources."

It is generally agreed that in order to be admissible under Rule 406, evidence of a person's habit must be shown to be a regularly repeated response to similar factual situations. The trustworthiness of habit evidence lies in its regularity, so that the act or response is shown to be almost semiautomatic.

*Rodgers v. Rodgers,* 184 W.Va. 82, 93–94, 399 S.E.2d 664, 675–76 (1990) (footnotes omitted). The Fourth Circuit Court of Appeals has further explained that:

[i]t is only when the examples offered to establish such pattern of conduct or habit are 'numerous enough to base an inference of systematic conduct' and to establish 'one's regular response to a repeated specific situation' or, to use the language of a leading text, where they are 'sufficiently regular or the circumstances sufficiently similar to outweigh the danger, if any of prejudice and confusion,' that they are admissible to establish a pattern or habit. In determining whether the examples are 'numerous enough' and 'sufficiently regular,' the key criteria are 'adequacy of sampling and uniformity of response....'

*Wilson v. Volkswagen of America, Inc.,* 561 F.2d 494, 511 (4th Cir.1977) (footnotes and citations omitted), *cert. denied,* 434 U.S. 1020, 98 S.Ct. 744, 54 L.Ed.2d 768 (1978).

In the instant case, Appellant has no evidence of complaints concerning other excision arthroplasties of the metacarpal trapezium joint with gelfoam implants performed by Dr. Saldanha, nor is there any evidence of complaints concerning any other type of excision arthroplasty performed by Dr. Saldanha. Because the discovery conducted in this case has revealed that Appellant's surgery was the first time Dr. Saldanha performed the procedure using the gelfoam implant, Dr. Saldanha's singular performance of this procedure necessarily prevents his conduct from rising to the level of habit performance.

■ The final reason suggested by Appellant for admitting the peer review evidence is to enable her to impeach Dr. Saldanha's credibility. On this point, we reference our recent decision in *Arnoldt v.*

*Ashland Oil, Inc.,* 186 W.Va. 394, 412 S.E.2d 795 (1991), where we recognized that "[n]otwithstanding its seemingly broad language, Rule 607 '"does not free either party to introduce otherwise inadmissible evidence into trial under the guise of impeachment."'" *Id.* at 407, 412 S.E.2d at 808 (quoting *State v. Collins,* 186 W.Va. 1, [8,] 409 S.E.2d 181, 188 and Syl. Pt. 4 (1990)).

The circuit court correctly saw through the Appellant's subterfugery when it commented: "You know, you're trying to—this windfall fell in your lap there, and you're trying to utilize it during discovery of those other people that you picked up that you didn't know about before, and hoping that you might be able to use it for impeachment purposes." This Court concurs with the lower court's observation that Appellant's motivation in seeking to introduce evidence of unrelated procedures is to prove her case of negligence against Dr. Saldanha by pointing to prior instances of alleged malfeasance. The rules of evidence simply do not permit Appellant to prove her case by introducing evidence of prior allegations of negligence.

Based upon the foregoing opinion, this Court hereby affirms the decision of the Circuit Court of Kanawha County.

Affirmed.