THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JESUS ALVAREZ-GARCIA, Defendant-Appellant.

First District (4th Division)   No. 1—07—1022

Opinion filed October 29, 2009.

Patricia Unsinn and Emily E. Filpi, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (James E. Fitzgerald, Mary P. Needham, and William C. Swallow, Assistant State's Attorneys, of counsel), for the People.

JUSTICE NEVILLE delivered the opinion of the court:

Jesus Alvarez-Garcia was arrested on June 27, 2002, for the murder of his estranged wife, Maritza Baez, and for the aggravated battery of Michelle Baez, Maritza Baez's unborn child. Later, he was charged by indictment on October 31, 2002, with nine counts of first degree murder and one count of the aggravated battery with a firearm of Maritza Baez. Three months after Alvarez-Garcia was indicted, Michelle Baez died and the State charged the defendant with an additional eight counts of first degree murder based on felony murder. Prior to the start of his trial on January 18, 2005, Alvarez-Garcia waived his right to a death penalty hearing and to a jury trial and elected to have a bench trial. At the conclusion of the trial, Alvarez-Garcia was found guilty of both murders and the trial court imposed a death sentence on March 30, 2005. The trial court subsequently vacated the death sentence and sentenced Alvarez-Garcia to a term of natural life on March 9, 2007.

Alvarez-Garcia argues on appeal (1) that his right to counsel was violated because one of the attorneys conducting his defense was not a member of the Capital Litigation Trial Bar as required by the supreme court rules; (2) that the State failed to prove him guilty beyond a reasonable doubt (a) because the State failed to prove that he acted with the intent to kill Michelle Baez, and (b) because the act that constituted the predicate felony for the felony murder conviction was the same act that caused Michelle Baez's death; and (3) that the mittimus should be corrected to reflect two convictions for first degree murder.

## BACKGROUND

The record reveals that Alvarez-Garcia and Maritza Baez were married in 2000 but separated in 2001. Baez obtained an order of protection against Alvarez-Garcia on November 15, 2001, and it remained in effect until November 15, 2002, because he made threats on her life. During Baez's separation from Alvarez-Garcia, she became involved with Miguel Rivera and became pregnant in December 2001. According to Rivera, on June 27, 2002, when Maritza Baez was approximately 7 1/2 months pregnant, she left the home she shared with Rivera, her fiancé and the father of her then-unborn child, and trav-

eled to the La Caleza Restaurant at 2521 North Milwaukee Avenue in Chicago. Baez parked her car outside the restaurant in a parking space that was two or three cars away from where Alvarez-Garcia parked his car.

Rivera testified that he was engaged to Baez when she was shot and killed. He was the father of the child who died. Rivera explained how he received a telephone call, learned that his fiancée had been shot and traveled to Illinois Masonic Hospital, where she delivered the baby. According to Rivera, Michelle (the baby) remained in Illinois Masonic Hospital and Christ Hospital for a total of 3 months and 18 days on a ventilator.

Carlos Avila, Leticia Ramirez, Donald Piehl, Luis Andrade and Annette Hernandez were eyewitnesses who each testified that they watched as Alvarez-Garcia walked up to Baez's car, raised his gun, reached into her car, and fired three or four shots before returning to his car and driving away from the scene. After the shooting, Avila, Andrade and Hernandez approached the victim to see if they could help. When Avila arrived at Baez's car, he realized it was in gear, so he opened the door, reached in and put the car in park. Avila testified that he spoke with the police at the scene and later that evening when he identified Alvarez-Garcia in a lineup. Avila also identified Alvarez-Garcia during the trial as the person he saw shoot and kill Baez.

Ramirez testified that she saw Alvarez-Garcia in his parked car with a gun. Ramirez saw the shooting and watched as Alvarez-Garcia returned to his car and drove away. Ramirez viewed a photograph during the trial and testified that she recognized Alvarez-Garcia's car and Baez's car.

Piehl testified that he is a mailman whose postal route included the scene of the crime. Piehl was delivering mail when he heard a noise, turned and saw a car hitting the curb, and saw Alvarez-Garcia standing outside the driver's side of Baez's car. Piehl heard three gunshots and watched as Alvarez-Garcia returned to his car and drove away.

Andrade testified that he was working as a technician installing car radios at the Mega Mall located near the scene of the shooting when Baez was killed. Andrade was installing a car amplifier and was outside in front of the store where he worked when the shooting took place. Andrade testified that he heard three gunshots while he was doing his work. Andrade identified Alvarez-Garcia as the person he saw with a gun in his left hand, who pointed it into Baez's car, and after Andrade heard the shots, he watched as Alvarez-Garcia left the scene.

Hernandez testified that she was staying at the Mil-Shire Hotel on June 27, 2002, which is in the area of the shooting. Hernandez was

parked outside the Mega Mall at the time of the shooting. According to Hernandez, Baez was dressed in a flowery maternity blouse when she emerged from a nearby restaurant and got into her vehicle. Hernandez identified Alvarez-Garcia as the man who approached Baez's car, moved to the driver's side, stuck a black gun in the window, shot three or four times, and walked to his car and drove off. Hernandez wrote down Alvarez-Garcia's license plate number and called 9-1-1. After Alvarez-Garcia left the scene, Hernandez ran to Baez's car and saw that she was "shot up." Finally, Hernandez testified that she viewed a lineup and identified the defendant as the person who shot the victim.

Martin Sarmiento testified that he had been acquainted with Alvarez-Garcia for almost 10 years. Sarmiento was working as a cook at the Barbecue Patio Restaurant at 5635 South Ashland Avenue, on June 27, 2002. According to Sarmiento, Alvarez-Garcia visited the restaurant and ate and, during the meal, told him that he had a problem because he shot someone but he did not identify the person. When Alvarez-Garcia arrived at the restaurant, he was carrying a black bag that was approximately the size of a grocery bag. Alvarez-Garcia asked Sarmiento to take him home, which he did. Sarmiento left Alvarez-Garcia in his house while he went back to work and, later, traveled to a second job. Sarmiento was headed home from his second job when he was stopped by the police, who he believed had already arrested Alvarez-Garcia.

Detective Dan Jacobs testified that he was working on June 27, 2002, and was assigned to investigate the shooting of Maritza Baez. According to Detective Jacobs, he received a broadcast message that provided him with the license plate number of a dark-colored car that was found less than a mile from the location of the shooting. Detective Jacobs testified that the automobile's registration documents were found inside the car and indicated that the automobile belonged to Alvarez-Garcia. Detective Jacobs acquired a photograph of Alvarez-Garcia, placed it in a photo array and exhibited it to a witness who had witnessed the shooting. Alvarez-Garcia was identified in the photo array but the officer did not provide the name of the witness who identified him.

Detective Anthony Noradin testified that he was assigned to conduct a follow-up investigation of Maritza Baez's homicide. Detective Noradin traveled to 2526 76th Street, where he spoke with Natali Peralta, whose mother was acquainted with the defendant. After speaking with Peralta, Detective Noradin traveled to an address on 85th Street, where he spoke with Peralta's mother, who worked with Alvarez-Garcia.

Detective Noradin testified that he traveled to 3717 South Hermitage, where Alvarez-Garcia was arrested and a gun was recovered under a bed in the room where he was found sleeping. Alvarez-Garcia was taken to the Area 5 police headquarters, placed in an interview room and read his *Miranda* rights,[1] which the defendant indicated that he understood. According to Detective Noradin, he spoke with Alvarez-Garcia at approximately 11:15 p.m., on June 27, 2002, in the interview room in the presence of Detectives Schalk and Bogucki. Detective Noradin testified that Alvarez-Garcia told him (1) that he and Baez had been having problems and had separated in November 2001; (2) that Baez indicated to him that she had been unfaithful; (3) that Baez told him she wanted a divorce; (4) that Baez told Alvarez-Garcia that she was planning to move in with Miguel Rivera; (5) that, in January 2002, he was driving down Milwaukee Avenue and saw Baez's car parked in front of a restaurant; (6) that he entered the restaurant and confronted his wife about her presence there; (7) that Miguel Rivera threw him out of the restaurant; (8) that Baez swore out an order of protection against him which was served on him by the sheriff at his job; (9) that, on June 27, 2002, Alvarez-Garcia saw Baez seated in her parked car, which was across the street from the restaurant; (10) that Alvarez-Garcia went home, got his gun and returned to the restaurant; (11) that Alvarez-Garcia approached the vehicle on the driver's side and fired shots into the car; and (12) that Alvarez-Garcia did not know that Baez was pregnant when he shot her. The defendant subsequently gave a videotaped version of the statement he made to the detectives.

Alvarez-Garcia also told Detective Noradin that he left the scene of the shooting, drove to the 2100 block of Bingham, put the gun in a plastic bag and headed to a nearby restaurant to eat before he boarded a bus. Alvarez-Garcia explained to Detective Noradin how he traveled to the Barbecue Patio Restaurant, where he met his friend, Martin Sarmiento, told him that he shot someone and asked Sarmiento to let him stay in his house.

Dr. Nancy Jones, the medical examiner, testified that she conducted the medical examination of Maritza Baez's body and concluded that she died from four gunshot wounds, one that had stipling. Dr. Jones also testified that Maritza Baez died during her thirty-second week of pregnancy and was obviously pregnant with a large abdomen. Dr. Kendall Crowns conducted an autopsy of Michelle Baez, the infant, and concluded that her cause of death was sepsis due to prematurity resulting from her mother's gunshot wounds.

---

[1]The parties stipulated that Alvarez-Garcia was accurately advised of his *Miranda* rights.

The State rested at the conclusion of its case and the defendant made a motion for directed verdict which was denied. The defendant rested without presenting any evidence. The trial court found that the State did not prove that Alvarez-Garcia knew that Baez was pregnant with Michelle when she was shot. Then the trial court found Alvarez-Garcia guilty of the first degree murder of Maritza Baez and Michelle Baez.

On March 2, 2005, Alvarez-Garcia filed a motion for new trial and argued (1) that the State failed to prove him guilty beyond a reasonable doubt; (2) that "the finding is against the weight of the evidence"; (3) that the trial court erred when it denied the defendant's motion for directed verdict; and (4) that the trial court erred when it found Alvarez-Garcia guilty of the death of Michelle Baez based upon issues of transferred intent, reasonable foreseeability and knowledge of the physical condition of victim Maritza Baez. The trial court conducted a hearing in aggravation and mitigation and imposed the death penalty for the first degree murders of Maritza and Michelle Baez.

On March 30, 2005, Alvarez-Garcia filed a motion to reconsider the sentence and argued (1) that the sentence was excessive in view of Alvarez-Garcia's background and the nature of his participation in the offense; (2) that the trial court improperly considered matters in aggravation that are implicit in the offense; (3) that the State failed to prove eligibility for an enhanced penalty or extended-term sentence; (4) that the sentence is improperly disparate; and (5) that the sentence improperly penalized Alvarez-Garcia for exercising his right to trial. On April 29, 2005, Alvarez-Garcia filed an amended motion for a new trial which the trial court denied.

On June 30, 2005, the trial court granted Alvarez-Garcia's motion to reconsider sentence and present additional mitigation evidence. The trial court conducted a second hearing on March 8, 2007, and vacated the death sentence and sentenced Alvarez-Garcia to a term of natural life, explaining that "I didn't determine that one of the lawyers was not even qualified. Under our standards today, she wasn't qualified. I won't use names, but she wasn't qualified to handle this case. That's not her fault. That [sic] my fault because that's my inquiry that I have to make, and I didn't do it. And under the law now, I must do it."

## ANALYSIS

### Standard of Review

The threshold issue we must decide in this case is whether Alvarez-Garcia's right to counsel is automatically violated if the trial court failed to confirm that he was represented by two members of the

Capital Trial Litigation Bar as required by the supreme court rules. Because we must engage in statutory construction to determine whether there was compliance with the supreme court rules, our review is *de novo. People v. Lloyd*, 338 Ill. App. 3d 379, 384 (2003), citing *People v. Hayes*, 336 Ill. App. 3d 145, 147 (2002).

## Judicial Notice

■ Alvarez-Garcia argues that his right to be represented by qualified counsel was violated during this case because he was not represented by two members of the Capital Litigation Trial Bar as required by Supreme Court Rule 416(d). 188 Ill. 2d R. 416(d). The State maintains that the record is devoid of evidence to support the defendant's claim that he was not represented by two attorneys that were certified as members of the Capital Litigation Trial Bar. On October 8, 2008, after the briefs were filed in this case, Alvarez-Garcia filed a motion to supplement the record on appeal with a copy of the supreme court clerk's September 23, 2008, letter. We note that the State did not file an objection to Alvarez-Garcia's motion. This court granted Alvarez-Garcia's motion and permitted him to file the supplemental record on October 15, 2008. However, the rules do not permit evidence not considered by the trial court or documents, like the clerk's letter, that were not filed in the trial court to be included in the record on appeal. See *Jenkins v. Wu*, 102 Ill. 2d 468, 483-85 (1984). Therefore, since the record was supplemented with a document that was not considered by the trial court, we vacate the October 15, 2008, order. *Jenkins*, 102 Ill. 2d at 483.

It should be noted that Alvarez-Garcia filed a reply brief on September 29, 2008, and asked this court to take judicial notice of the roster of attorneys that is maintained by the Illinois Supreme Court. In support of his request that this court take judicial notice of the records kept by the Illinois Supreme Court, Alvarez-Garcia enclosed in the appendix of his reply brief a copy of a letter that was sent on September 23, 2008, by the clerk of the Illinois Supreme Court to the Office of the State Appellate Defender. The clerk's letter establishes (1) that Alvarez-Garcia's lead counsel became certified as a member of the Capital Litigation Trial Bar on January 23, 2002, and (2) that Alvarez-Garcia's co-counsel became certified as a member of the Capital Litigation Trial Bar as co-counsel on March 4, 2004, and as lead counsel on April 14, 2005. However, while a reviewing court may not supplement the record with a document not considered by the trial court, this court may take judicial notice of matters that are readily verifiable from sources of indisputable accuracy. *People v. Mata*, 217 Ill. 2d 535, 539-40 (2006), citing *People v. Henderson*, 171 Ill. 2d

124, 134 (1996). We find that the clerk's letter is a public document that contains information kept by the Administrative Office of the Illinois Courts that is readily verifiable and the Administrative Office is a source of indisputable accuracy. 188 Ill. 2d R. 714(f) (the Administrative Office shall maintain and promulgate a roster of attorneys designated as members of the Capital Litigation Trial Bar). Supreme Court Rule 366 also provides, in pertinent part, that in all appeals the reviewing court may, in its discretion, and on such terms as it deems just, make any order and grant any relief that the case may require. 155 Ill. 2d R. 366. Therefore, Supreme Court Rule 366 empowers this court to take judicial notice of the information in the supreme court clerk's letter because the letter is a public document that contains information that is readily verifiable from a source of indisputable accuracy and it will aid in the disposition of this case. 155 Ill. 2d R. 366. Accordingly, we take judicial notice of the dates on which defendant's counsels became members of the Capital Litigation Trial Bar.

## Forfeiture

Next, the State argues that Alvarez-Garcia has forfeited consideration of this issue because he failed to object during the trial or in a written motion for new trial. Alvarez-Garcia responds that even if his right to counsel is subject to forfeiture, the right to counsel implicates a substantial right and a reviewing court should invoke every reasonable presumption against the waiver of that right.

It is well established that, in order to preserve an issue for review, a defendant must raise an objection both at trial and in a written posttrial motion. *People v. Bush*, 214 Ill. 2d 318, 332 (2005), citing *People v. Enoch*, 122 Ill. 2d 176, 186 (1988); see also *People v. Macri*, 185 Ill. 2d 1, 43 (1998). The record reveals that Alvarez-Garcia did not object to the fact that his co-counsel was not a member of the Capital Litigation Trial Bar during the pretrial or trial stages of the proceedings. The record also reveals that, although Alvarez-Garcia filed a motion for a new trial and a motion to reconsider his sentence, he did not include this issue in either posttrial motion. *Bush*, 214 Ill. 2d at 332, citing *Enoch*, 122 Ill. 2d at 186 (to perfect an issue for appeal, a defendant must object at trial and include the issue in an appropriate posttrial motion).

We note, however, that the trial court *sua sponte* addressed the issue when it granted Alvarez-Garcia's motion to reconsider his sentence. The trial court became aware of the issue, had an opportunity to confirm the qualifications of the defendant's trial counsel while considering the defendant's motion to reconsider his sentence, and found that defendant's co-counsel was not qualified to act as his

attorney. We are mindful of the fact that the rationale for requiring a defendant to perfect his or her claims of error on appeal by rasing an objection at trial and filing an appropriate posttrial motion is that it gives the trial court the opportunity to address and, if warranted, correct errors at the trial level. *Enoch*, 122 Ill. 2d at 186. We are also mindful of the fact that without a posttrial motion that limits the consideration to errors considered significant, the appeal would be open-ended. *People v. Galan*, 229 Ill. 2d 484, 499 (2008), quoting *People v. Lewis*, 223 Ill. 2d 393, 400 (2006), quoting *Enoch*, 122 Ill. 2d at 186, quoting *People v. Caballero*, 102 Ill. 2d 23, 31-32 (1984). Thus, generally, where a defendant raises an issue for the first time on appeal, the issue is deemed to be forfeited. *People v. Naylor*, 229 Ill. 2d 584, 592 (2008), citing *People v. Moss*, 205 Ill. 2d 139, 168 (2001), *People v. Young*, 128 Ill. 2d 1, 38-40 (1989), and *Enoch*, 122 Ill. 2d at 186.

Illinois case law does not indicate whether a forfeiture occurs when the trial court *sua sponte* considers an issue that the defendant failed to raise during the trial or in a posttrial motion. We find (1) that Supreme Court Rule 416, which prescribes the procedures to be followed in capital cases, imposes a duty on the trial court to hold a case management conference and to confirm the certification of counsel under Supreme Court Rule 714 (188 Ill. 2d Rs. 416(f)(i), 714(b)); and (2) that Supreme Court Rule 701(b) (145 Ill. 2d R. 701(b)) imposes a duty on attorneys not to appear in capital cases unless they are members of the Capital Litigation Trial Bar provided for in Rule 714. Therefore, Supreme Court Rules 416, 701 and 714 delineate the procedure to be followed and the qualifications an attorney must possess in a capital case to effectuate a defendant's right to counsel. 188 Ill. 2d Rs. 416(f)(i), 714(b); see also 145 Ill. 2d R. 701.

Our review of the record fails to reveal that a case management conference was held by the trial court to confirm the membership of the defendant's trial counsel in the Capital Litigation Trial Bar. Supreme Court Rule 416 was promulgated to assure that capital defendants receive fair and impartial trials, to minimize the occurrence of error, and to identify and correct any error that may occur. 188 Ill. 2d R. 416(b). By failing to confirm the membership of Alvarez-Garcia's counsel in the Capital Litigation Trial Bar as required by Supreme Court Rule 416, during the 120-day period after the defendant's arraignment or within 60 days after the State disclosed its intent to seek the death penalty, and by discussing the trial bar membership issue for the first time after granting the defendant's motion to reconsider his sentence, the trial court failed to comply with the Supreme Court Rule 416. 188 Ill. 2d R. 416.

While the case law seems to suggest that there would be a forfeiture where the defendant fails to object during the trial or fails to raise the issue in a posttrial motion, we also note that the rules regarding forfeiture may be relaxed where the error, as in this case, is made by the trial court: the trial court failed to confirm the membership of the defendant's counsel in the Capital Litigation Trial Bar as required by the supreme court rules. *People v. Brigham*, 151 Ill. 2d 58, 60 (1992). Where the trial court commits an error, we relax forfeiture rules because the forfeiture of issues is a limitation on the parties and not the court (*People v. Normand*, 215 Ill. 2d 539, 544 (2005), citing *In re W.C.*, 167 Ill. 2d 307, 323 (1995); see also *People v. Carter*, 208 Ill. 2d 309, 319 (2003)); and because the doctrine of forfeiture, like waiver, can be relaxed where the facts relating to the claim do not appear on the face of the original appellate record, such as the dates when the defendant's trial counsel became members of the Capital Litigation Trial Bar and qualified to represent him in a capital case as either lead counsel or co-counsel (*People v. Harris*, 206 Ill. 2d 1, 15 (2002)).

Here, the strict application of the forfeiture rule will be relaxed because fundamental fairness so requires. *People v. Brigham*, 151 Ill. 2d 58, 60 (1992), citing *People v. Burns*, 75 Ill. 2d 282, 290 (1979). It would be fundamentally unfair for this court to invoke the forfeiture rule when the supreme court rules impose a duty on the trial court to confirm the membership of the defendant's trial counsel in the Capital Litigation Trial Bar (188 Ill. 2d R. 416(f)(i)), and imposes a duty on defendant's trial counsel not to appear in capital cases unless they are members of the Capital Litigation Trial Bar (145 Ill. 2d R. 701(b)). The defendant does not present any evidence and does not contend (1) that his attorneys provided deficient representation, or (2) that he was prejudiced by the deficient representation. *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). Instead, Alvarez-Garcia is asking for the application of a *per se* rule—that the trial court's failure to confirm that his counsel were members in the Capital Litigation Trial Bar automatically deprived him of his sixth amendment right to counsel. The question becomes whether the trial court's failure to confirm defense counsel's membership in the Capital Litigation Trial Bar, standing alone, violated the defendant's sixth amendment right to counsel. *Brigham*, 151 Ill. 2d at 70-71.

■ We find that the right to counsel is a fundamental right that is codified in both the sixth amendment to the United States Constitution and article I, section 8, of the Illinois Constitution. U.S. Const., amend VI; Ill. Const. 1970, art. I, §8. *Brigham* holds that an unlicensed person representing a defendant would deny the defendant his sixth amendment right to counsel. *Brigham*, 151 Ill. 2d at 67. Supreme

Court Rule 701 provides that an attorney cannot appear in a capital case unless he or she possesses the qualifications codified in Rule 714 and is certified as a member of the Capital Litigation Trial Bar. 145 Ill. 2d R. 701; 188 Ill. 2d R. 714(b). What matters for constitutional purposes is whether the legal representative rendering legal assistance was a member of the Capital Litigation Trial Bar. *Brigham*, 151 Ill. 2d at 67. Therefore, we hold that a licensed attorney who represented a defendant in a capital case but was not certified as lead counsel or co-counsel and a member of the Capital Litigation Trial Bar would deny the defendant his sixth amendment right to counsel. *Brigham*, 151 Ill. 2d at 67.

We must determine whether the defendant's legal representatives in this case were members of the Capital Litigation Trial Bar in order to decide if there was an automatic or a *per se* violation of the defendant's sixth amendment right to counsel. *Brigham*, 151 Ill. 2d at 67. The facts establish that Alvarez-Garcia was arrested on June 27, 2002; he was indicted on October 31, 2002; the trial commenced on January 18, 2005; he was sentenced to death on March 30, 2005; and the death sentence was vacated and he was sentenced to life on March 9, 2007. We find that the clerk's letter establishes that Alvarez-Garcia's legal team consisted of lead counsel who became certified as a member of the Capital Litigation Trial Bar on January 23, 2002, and a second attorney who became certified as co-counsel on March 4, 2004, and as lead counsel on April 15, 2005. The record reveals that Alvarez-Garcia's lead counsel was present in court at every hearing, except on July 19, 2004, when co-counsel appeared to request a continuance; therefore, we find that co-counsel was supervised during all stages of the capital proceedings by a member of the Capital Litigation Trial Bar. Accordingly, we hold (1) that Alvarez-Garcia's lead attorney was a member of the Capital Litigation Trial Bar during the pretrial, trial and posttrial stages of the capital proceeding, and (2) that, although Alvarez-Garcia's co-counsel was not a member of that trial bar during the pretrial stages of the capital proceedings, she was supervised by lead counsel, and she became a member of the Capital Litigation Trial Bar and certified as co-counsel and lead counsel during the trial and posttrial stages of the capital proceedings.

In this case, because the defendant's lead counsel was a certified member of the Capital Litigation Trial Bar, and because the defendant's co-counsel was supervised by lead counsel during the pretrial proceedings and became a member of the Capital Litigation Trial Bar prior to trial, the defendant was not denied his sixth amendment right to counsel. *Brigham*, 151 Ill. 2d at 67. In order to establish an automatic or *per se* violation of defendant's sixth amendment right to

counsel, there must be more than the trial court's failure to confirm trial counsel's membership in the Capital Litigation Trial Bar. *Brigham*, 151 Ill. 2d at 70-71. With the defendant's trial counsel being certified members of the Capital Litigation Trial Bar, there was no automatic or *per se* violation of the defendant's sixth amendment right to counsel. Accordingly, in the absence of a showing of deficient representation or a lack of membership in the Capital Litigation Trial Bar, the trial court's failure to confirm the membership of defendant's trial counsel in the Capital Litigation Trial Bar did not, standing alone, deny him his sixth amendment right to counsel. *Brigham*, 151 Ill. 2d at 67.

## Sufficiency of the Evidence

Alvarez-Garcia argues that his conviction must be reversed because the State failed to present sufficient evidence to prove him guilty beyond a reasonable doubt. "When reviewing an insufficiency of the evidence claim in a criminal conviction, a court determines whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Patterson*, 217 Ill. 2d 407, 447 (2005), citing *People v. Evans*, 209 Ill. 2d 194, 209 (2004). " 'We will not reverse a conviction unless the evidence is so unreasonable, improbable or unsatisfactory that it raises a reasonable doubt of defendant's guilt.' " *Patterson*, 217 Ill. 2d at 447, quoting *Evans*, 209 Ill. 2d at 209. "This court will not retry a defendant when considering a sufficiency of the evidence challenge." *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007), citing *People v. Smith*, 185 Ill. 2d 532, 541 (1999). "The trier of fact is best equipped to judge the credibility of witnesses, and due consideration must be given to the fact that it was the trial court and jury that saw and heard the witnesses." *Wheeler*, 226 Ill. 2d at 114-15, citing *Smith*, 185 Ill. 2d at 541-42.

## A. Transferred Intent

Alvarez-Garcia argues that the State failed to prove him guilty of the first degree murder of Michelle Baez, the child, (1) because it failed to prove that he acted with the knowledge of the pregnancy or with the specific intent to kill her; and (2) because the act of shooting Maritza Baez, the mother, was the same act that led to the child's death and, therefore, the forcible felonies of first degree murder and aggravated battery with a firearm cannot stand as the predicate felonies for a felony murder conviction.

The State argues that Alvarez-Garcia's conviction for the first degree murder of Michelle Baez should not be vacated because he is

guilty under the theories of knowing murder through the transferred intent doctrine and felony murder because he had a different felonious purpose for the murder of Maritza Baez.

■ In Illinois, a person is guilty of first degree murder where he or she kills an individual without lawful justification and either intends to kill or to do great bodily harm to that individual or another. *People v. Woodard*, 367 Ill. App. 3d 304, 316 (2006), citing 720 ILCS 5/9—1(a)(1) (West 2004). To prove an individual guilty of first degree murder, the State need only show that a defendant's criminal acts contributed to causing the victim's death, even if those acts were not the sole and immediate cause of death. *Woodard*, 367 Ill. App. 3d at 316, citing *People v. Crane*, 333 Ill. App. 3d 768, 773 (2002). Alvarez-Garcia does not attack his conviction for the murder of Maritza Baez. The record reveals that Alvarez-Garcia gave a videotaped confession and admitted that he retrieved a gun from the restaurant and shot Maritza Baez, who was sitting in a parked car. The record also reveals that the eyewitness testimony was consistent with Alvarez-Garcia's videotaped statement. Therefore, the evidence established that Alvarez-Garcia intended to kill Maritza Baez.

However, the trial court found that Alvarez-Garcia was unaware that Maritza Baez was pregnant at the time he caused her death. Therefore, with respect to the charge that Alvarez-Garcia caused the death of Michelle Baez, the baby, we must determine whether Alvarez-Garcia's intent to kill Maritza Baez was transferred to Michelle Baez.

■ ■ Illinois has consistently held that, "[u]nder the doctrine of transferred intent, one who does an unlawful act is liable for the natural and probable consequences of such act." *People v. Dorn*, 378 Ill. App. 3d 693, 698 (2008), citing *People v. Hickman*, 9 Ill. App. 3d 39, 44 (1973). Therefore, "[u]nder the doctrine of transferred intent, if a defendant shoots at one person, with the intent to kill, but kills an unintended victim, he may be convicted of the crime of murder for the death of the unintended victim." *People v. Thompson*, 313 Ill. App. 3d 510, 516 (2000); see also *People v. Psichalinos*, 229 Ill. App. 3d 1058, 1067 (1992) (finding the defendant had the requisite mental state as to the unintended victim where the defendant had the requisite mental state as to the intended victim). It is sufficient under the transferred intent doctrine if the death of the unintended victim was a natural and probable consequence of the deliberate act of shooting the intended victim. *Dorn*, 378 Ill. App. 3d at 698-99. This principle is unaffected by the fact that both the intended victim and the unintended victim are killed. *People v. Young*, 263 Ill. App. 3d 627, 637 (1994). We are unwilling to limit the application of the transferred

intent doctrine where the consequence of the defendant's acts are natural and probable but unintended. Accordingly, although Michelle Baez's death was unintended, Alvarez-Garcia is responsible for her death because it was a natural and probable consequence of his act of intentionally shooting her mother multiple times while she was *in utero*. *Thompson*, 313 Ill. App. 3d at 516 ("if a defendant shoots at one person, with the intent to kill, but kills an unintended victim").

## B. Felony Murder

■ Alvarez-Garcia also argues that his felony murder conviction for the murder of Michelle Baez was based on the same act as the murder, the shooting of Maritza Baez. According to Alvarez-Garcia, both the shooting of Maritza Baez and the subsequent death of Michelle Baez resulted from the same act and the felony murder conviction cannot rest on a predicate felony which is inherent in the murder itself.

The State argues that it proved Alvarez-Garcia guilty of felony murder where the underlying predicate felonies were committed with a separate purpose. According to the State, the question is whether the predicate felony is inherent in the killing and involved conduct that had a felonious purpose other than the conduct that resulted in the killing. The State argues that the predicate felonies in this case, the first degree murder and the aggravated battery with a firearm, were not directed at Michelle Baez but were directed at her pregnant mother. The State also argues that the conduct of retrieving a gun, approaching Maritza Baez, pointing the gun at her and discharging it was not an act that was inherent in or arising out of the killing of Michelle Baez.

In Illinois, the following are three mental states or conduct that can accompany acts that cause a murder: (1) a defendant can *intend* to kill or do great bodily harm to the victim (intentional murder), (2) a defendant can *know* that his acts create a strong probability of death or great bodily harm to the victim (knowing murder, also known as strong probability murder), or (3) a defendant can *attempt or commit a forcible felony other than second degree murder* (felony murder). *People v. Davis*, 233 Ill. 2d 244, 263 (2009), citing 720 ILCS 5/9—1(a) (West 2004). " 'When the intent is to kill, there is no predicate felony; it is only when there is no intent to kill that a predicate felony is possible.' " *People v. Phillips*, 383 Ill. App. 3d 521, 539 (2008), quoting *People v. Boyd*, 356 Ill. App. 3d 254, 259 (2005) (felony murder may be predicated on the aggravated discharge of a firearm). Therefore, in order to support a charge of felony murder, the predicate felony that underlies the charge of felony

murder must have an independent felonious purpose. *Davis*, 233 Ill. 2d at 264, quoting *People v. Morgan*, 197 Ill. 2d 404, 458 (2001).

In this case, Alvarez-Garcia committed two predicate felonies, first degree murder and aggravated battery with a firearm, and he admitted that he intended to murder Maritza Baez. Because Alvarez-Garcia committed two predicate felonies when he shot Maritza Baez, he can be found guilty of Michelle Baez's felony murder if the predicate felonies connected to Maritza Baez's murder had an independent felonious purpose. *Davis*, 233 Ill. 2d at 264, quoting *Morgan*, 197 Ill. 2d at 458. While Alvarez-Garcia's felonious purpose was to murder Maritza Baez when he committed the two predicate felonies, the death of Michelle Baez from sepsis was an unintended consequence of shooting Maritza Baez; thus, the predicate felonies connected to Maritza Baez's murder had an independent felonious purpose. *Davis*, 233 Ill. 2d at 264, quoting *Morgan*, 197 Ill. 2d at 458. Here, we find that Alvarez-Garcia's act of shooting Maritza Baez was not an act that was inherent in and arose out of the murder of Michelle Baez because the shooting had a felonious purpose other than causing the death of the child. Accordingly, Alvarez-Garcia's conviction for the felony murder of Michelle Baez, based on the predicate felonies of first degree murder and aggravated battery with a firearm, is affirmed because the predicate felonies had an independent felonious purpose. *Davis*, 233 Ill. 2d at 264, quoting *Morgan*, 197 Ill. 2d at 458 (" 'the predicate felony underlying [the] charge of felony murder must have an independent felonious purpose' ").

### Incorrect Mittimus

■ Alvarez-Garcia's final argument is that his mittimus must be corrected to reflect two first degree murder convictions instead of the five first degree murder convictions that currently appear. The State concedes that Alvarez-Garcia's mittimus is incorrect and does not dispute the fact that the defendant is entitled to have his mittimus corrected.

It is axiomatic that "where there is only one victim and multiple convictions are obtained for murder arising out of a single act, sentence should be imposed only on the most serious offense." *People v. Smith*, 233 Ill. 2d 1, 21 (2009), citing *People v. Guest*, 115 Ill. 2d 72, 103 (1986). Based upon *Smith* and *Guest*, we find that the most serious convictions are count VIII (the murder of Maritza Baez) and count XV (the murder of Michelle Baez). Accordingly, pursuant to Supreme Court Rule 615(b)(1), we direct the clerk of the circuit court to correct the defendant's mittimus to reflect one conviction for the first degree murder of Maritza Baez and a second conviction for the first degree murder of Michelle Baez. 134 Ill. 2d R. 615(b)(1).

## CONCLUSION

In light of the foregoing, Alvarez-Garcia's convictions for the first degree murder of Maritza Baez (count VIII) and his conviction for the first degree murder of Michelle Baez (count XV) are affirmed. The remaining counts against Alvarez-Garcia for the murders of Maritza Baez and Michelle Baez are hereby vacated and the mittimus shall be corrected by the clerk of the circuit court to reflect only one conviction for the first degree murder of Maritza Baez (count VIII) and one conviction for the first degree murder of Michelle Baez (count XV).

Affirmed in part and vacated in part; mittimus corrected.

O'BRIEN and GALLAGHER, JJ., concur.