**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 200363-U

Order filed March 16, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-20-0363 Circuit No. 17-CF-779 |
| | ) | |
| RAYMOND C.L. LINDSEY, | ) ) | Honorable Kevin W. Lyons, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HAUPTMAN delivered the judgment of the court.
Presiding Justice O'Brien and Justice Schmidt concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  (1) While the court erred in permitting the jury to hear that defendant had been convicted of a "forcible" felony and admitting into evidence hearsay testimony, these forfeited errors are not reversible plain errors. (2) The court erroneously considered during sentencing that defendant exercised his right to a jury trial, defendant had been the victim of violent criminal conduct of other people, and that defendant was involved in an order of protection case that was subsequently dismissed.

¶ 2    Defendant, Raymond C.L. Lindsey, appeals from his conviction of unlawful possession of a weapon by a felon (UPWF). Defendant argues the Peoria County circuit court: (1) erred in

allowing the jury to hear that he had previously been convicted of a "forcible" felony and inadmissible hearsay testimony, and (2) violated his right to a fair sentencing hearing by relying on three improper factors in aggravation. We affirm in part, vacate in part, and remand for resentencing.

¶ 3                                    I. BACKGROUND

¶ 4        The State charged defendant with UPWF (720 ILCS 5/24-1.1(a) (West 2016)), a Class 2 felony. The indictment alleged that defendant "knowingly had in his possession a firearm being a handgun and the defendant has been previously convicted of a forcible felony being residential burglary." Defendant waived his right to counsel and proceeded as a self-represented litigant.

¶ 5        Before trial, the court notified defendant that the State would have to prove that defendant had previously been convicted of a "forcible" felony. The State proposed two ways to introduce this evidence: (1) if defendant were willing to stipulate to the admission, the jury would only be informed that defendant was a forcible felon and would not be notified of the nature of the prior offense, or (2) if defendant did not stipulate, the State would present a certified copy of his prior conviction to the jury. Defendant generally objected to the use of the term "forcible" before felony. The State responded that it was required to prove defendant had a prior "forcible" felony conviction because UPWF was charged in this case as a Class 2 felony. Defendant agreed to stipulate to his prior "forcible" felony conviction.

¶ 6        During jury selection, the court explained to the venire that the UPWF charge was based on the allegation that defendant possessed a firearm after previously being convicted of a "forcible" felony.

¶ 7        In its opening statement, the State noted that the Peoria Police Department received an anonymous tip that a black male wearing a black shirt and torn jeans with a black and gray

2

backpack had a handgun with tape wrapped around the handle. Officer Charles Bruess located an individual who matched the description. That individual was defendant.

¶ 8        Bruess testified that on September 24, 2017, he was dispatched to the River West apartment complex on a report that "a male in the park, just north of the complex, that had a backpack and was showing children guns." Dispatch further described the black male with a gun as wearing a black T-shirt and cut up blue jeans, carrying a black and gray backpack. The gun was black with tape wrapped around the handle. At the apartment complex, Bruess saw an individual matching the description and identified the individual as defendant. Bruess addressed defendant, and defendant started walking away from Bruess. Defendant "dropped the backpack off on the porch of [one] of the apartments." Bruess called out to defendant again, and defendant approached Bruess. Bruess grabbed defendant by the arm and attempted to place him in handcuffs. Defendant pulled his arm away. When Officer Rachel Kindred arrived, Bruess told her to retrieve the backpack defendant had left near the apartment. Defendant then hit Bruess in the chest with his right elbow and fled. Officers eventually apprehended defendant. A .40-caliber black handgun with black electrical tape wrapped around the handle was discovered inside the backpack.

¶ 9        Kindred testified that on September 24, 2017, she was dispatched to the River West apartment complex on a report that a male walking around the area was "showing guns to kids." According to the dispatch, the gun was located in a black and gray backpack. The suspect was wearing a black T-shirt and ripped blue jeans. At the scene, Kindred saw another officer with defendant, who was wearing clothing that matched the description provided by dispatch, and she saw the backpack on a nearby porch. Two or three people were standing near the backpack. Kindred secured the backpack before any of the individuals could access it. Defendant fled as

Kindred secured the backpack, and after the chase, Kindred and Bruess opened the backpack and found a handgun and ammunition inside. Kindred described the handgun as a .40-caliber pistol with black tape around the handle.

¶ 10    Officer Jacob Faw testified that on September 24, 2017, he was dispatched to the River West apartment complex on a report of a black male wearing a black T-shirt and ripped blue jeans, carrying a backpack, and armed with a handgun. Bruess radioed that he was with a male that matched the description provided by dispatch. Moments later, Bruess radioed that the male had fled. Faw identified defendant as the individual dispatch had described. At first, Faw followed defendant in his patrol vehicle, and then chased him on foot. While in pursuit, Faw saw defendant pull up his shirt in a way that revealed the butt of a handgun in his waistband. Faw lost sight of defendant for approximately five seconds, and when officers apprehended defendant, he did not have a gun on his person.

¶ 11    The State introduced into evidence the video from Faw's patrol vehicle. The video shows defendant run past while wearing clothing that matched the description provided by dispatch. While running, defendant grabs at his waistband.

¶ 12    Officer David Buss testified that he searched the backpack at the scene. In addition to the handgun and ammunition discovered by Bruess and Kindred, Buss found a pay stub that belonged to defendant inside the backpack. Buss acknowledged that although his police report mentioned the handgun was inside the backpack, he did not indicate in his report that he found the pay stub inside the backpack. Photographs introduced into evidence showed the handgun inside the backpack at the scene. Another photograph showed only the pay stub.

¶ 13    Buss also testified that he found no fingerprints suitable for comparison on the handgun, and DNA testing on the gun was unable to obtain a complete profile suitable for comparison.

¶ 14    Toward the end of the State's case-in-chief, it introduced the parties' stipulation. The court told the jury

> "Stipulation would be that the parties have—rather than require testimony to prove up a prior conviction of residential burglary, [defendant] and [the State's attorney] have agreed that that would not be contested. And the jury may consider, as a stipulation—in other words, by agreement—that the defendant has been convicted of residential burglary in 2013[.]"

¶ 15    After the State rested, defendant chose to testify. Defendant testified that he never possessed the backpack, handgun, or ammunition. Defendant acknowledged that the pay stub belonged to him, and he had carried it inside the pocket of his jeans. Defendant was sitting on the porch when officers approached him, and he ran because one of his friends had recently been killed by a police officer. The State impeached defendant's testimony with his 2013 convictions for residential burglary and attempted aggravated robbery.

¶ 16    During the jury instruction conference, the State tendered modified versions of Illinois Pattern Jury Instructions, Criminal, Nos. 18.07 and 18.08 (approved July 18, 2014). The first instruction stated: "A person commits the offense of [UPWF] when he, having been previously convicted of a forcible felony, knowingly possesses a firearm." The second proposed instruction stated:

> "To sustain the charge of [UPWF], the State must prove the following propositions:
>
> First Proposition: That the defendant knowingly possessed a firearm; and
>
> Second Proposition: That the defendant had previously been convicted of a forcible felony.

5

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty."

In response to the State's proposed instructions, defendant inquired "what do they mean when they say a 'forcible felony'? Because that sounds kind of violent to me when it says, 'Forcible.' " The court explained "In Illinois, there are—sometimes the Judge has to determine whether something is a forcible felony, but the statute does list, I don't know, 10 or so crimes that are forcible felonies. And residential burglary, I'm sure—I think is 1 of them." The State added "It is; aggravated robbery as well." The court and the State further explained that if defendant did not have a prior "forcible" felony, he would have been charged with "unlawful possession of a [firearm]."

¶ 17    During its closing argument, the State discussed the evidence, including that the Peoria Police Department received a call that an individual wearing a black T-shirt and cut up jeans with a black and gray backpack had a black handgun with tape wrapped around the handle. Officers identified an individual matching this description at the scene as defendant. The State also discussed the jury instructions explaining that two of the instructions were particularly important. First, " 'A person commits the offense of [UPWF] when he, having been previously convicted of a forcible felony, knowingly possesses a firearm.' " Second, to sustain the charge of UPWF, the jury must find that defendant knowingly possessed a firearm and had previously been convicted of a "forcible felony." The State explained "The defendant and myself stipulated that

6

he's been previously convicted of a forcible felony. You heard that he's been previously convicted of residential burglary and attempted aggravated robbery. That satisfies that element; you can move on." Then, the State argued that the first, and only contested element—that defendant knowingly possessed a firearm—had also been proven.

¶ 18      At the end of its rebuttal argument, the State again noted that "The defendant's been prior—previously convicted of a forcible felony. Find him guilty."

¶ 19      The court instructed the jury using the modified jury instructions tendered by the State. The jury found defendant guilty.

¶ 20      Before sentencing, defendant requested counsel to represent him during the posttrial proceedings. The court appointed counsel to represent defendant.

¶ 21      At the conclusion of the sentencing hearing, the court sentenced defendant to 11 years' imprisonment. In support of the sentence, the court discussed a 2012 Peoria County order of protection case that defendant was the subject of.[1] The court stated:

> "[The] allegations were that [defendant] tried to kick in her door, harassed her by telephone, threatened to kill her, and beat her up, broke her patio window and television, choked her and punched her in the face, choked her and bit her on the neck.
>
>      Those events occurred she says on October 16th, October 27th, October 30th, and October 31st, of 2012. Good grief."

Regarding the present case, the court said

---

[1]There is no indication in the record that the request for an order of protection was granted. Moreover, the Peoria County circuit court's website, which we take judicial notice of, indicates that the order of protection case mentioned in the presentence investigation report, case No. 12-OP-1444 was dismissed. See *People v. Alvarez-Garcia*, 395 Ill. App. 3d 719, 726 (2009).

7

"Twelve people from the community had to come and listen to you and listen to the police and listen to whoever you could get to testify and drag you over the finish line to get you where we are, not because [defendant] took any responsibility or accountability for his own actions.

No. It was a fight every step of the way. I don't like my lawyer. I don't like the facts. I don't like the testimony. I don't like the juror."

The court also discussed evidence in the presentence investigation report that indicated that defendant was stabbed in 2000, fractured his skull in 2003, was shot in 2009, was stabbed in 2011, and had undergone seven life-saving surgeries. The court said "What's left? You're running out of moments. I don't think you're a bad guy, [defendant], but you can't pull it in, and people are going to visit you at a funeral home." Defendant attempted to interject during the court's ruling, but the court continued:

"Be quiet. If you keep up what you're doing, the only thing you need to worry about is the law of probability. Most people go through their whole lives and never get arrested. You can't keep from it. Most persons go their whole life without being the victim of a violent crime. You've been stabbed, skull fractured, shot in the groin, and stabbed in the back. Do you not see where you're headed? Golly."

¶ 22     After sentencing, counsel filed a motion to reconsider sentence. The motion argued that the court assigned too much weight to the aggravating factors and too little weight to the factors in mitigation. At the hearing on the motion, counsel argued defendant's 11-year sentence was excessive and the court erred in relying on the aggravating factors. The court denied the motion, and defendant appeals.

8

¶ 23                                    II. ANALYSIS

¶ 24                                    A. Trial Errors

¶ 25        Defendant argues the court erred in allowing the jury to hear (1) he had previously been convicted of a "forcible" felony, and (2) inadmissible hearsay testimony from several officers that an unnamed caller told police that an individual matching defendant's description showed a handgun to children. Defendant acknowledges that he failed to preserve these errors for appellate review (see *People v. Enoch*, 122 Ill. 2d 176, 186 (1988)), but he argues that they are reversible plain errors. See *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

¶ 26        The plain error rule permits a court to consider a forfeited claim of error when:

> "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *Id.* (citing *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005)).

"A defendant seeking plain-error review has the burden of persuasion to show the underlying forfeiture should be excused." *People v. Johnson*, 238 Ill. 2d 478, 485 (2010). We review *de novo* whether a forfeited claim is reviewable as plain error. *Id.* The first step of plain error review is to determine if the court erred. *People v. Thompson*, 238 Ill. 2d 598, 606 (2010).

¶ 27        The State concedes that the court committed a clear and obvious error when it: (1) allowed the jury to hear that defendant had been convicted of a "forcible" felony, and (2) admitted hearsay testimony from Bruess, Kindred, and Faw that an unnamed caller told police that an individual matching defendant's description had a handgun. We agree with the

9

parties that the court erred in allowing the jury to hear that defendant had been convicted of a "forcible" felony. Although the court correctly indicated to defendant that his UPWF charge was enhanced to a Class 2 felony due to his commission of a prior "forcible" felony (720 ILCS 5/24-1.1(a) (West 2016)), this was not an element of the offense that the jury was required to find. See *People v. Webb*, 2018 IL App (3d) 160403, ¶ 17 (whether a prior conviction constitutes a "forcible" felony is a question of law); see also Illinois Pattern Jury Instructions, Criminal, No. 4.05, Committee Note (approved July 18, 2014) (explaining that the jury should not be instructed on the term "forcible" felony). Additionally, the court erred in permitting the jury to hear inadmissible hearsay evidence from three officers that the case began when an unnamed caller informed the Peoria Police Department that a person matching defendant's description was showing a handgun to children. See Ill. R. Evid. 801(c) (eff. Oct. 15, 2015); Ill. R. Evid. 802 (eff. Sept. 28, 2018). Accordingly, we proceed to the second step of the plain error analysis, determining whether defendant has met his burden to establish prejudice.

¶ 28    To determine whether the evidence was so closely balanced that the contested errors prejudiced the outcome of defendant's trial, we must "evaluate the totality of the evidence and conduct a qualitative, commonsense assessment of it within the context of the case." *People v. Sebby*, 2017 IL 119445, ¶ 53. This inquiry "involves an assessment of the evidence on the elements of the charged offense or offenses, along with any evidence regarding the witnesses' credibility." *Id.*

¶ 29    Here, the State charged defendant with UPWF. To sustain this charge, the State was required to prove that defendant (1) knowingly possessed a weapon on or about his person, and (2) he had been convicted of a felony. 720 ILCS 5/24-1.1(a) (West 2016).

¶ 30	At trial, Bruess testified that he saw defendant holding a backpack. Defendant set the backpack down before approaching Bruess. Bruess and Kindred later discovered a handgun in the backpack, and Buss documented the handgun along with a pay stub found in the backpack that belonged to defendant. Together, this evidence established that defendant possessed the handgun in the backpack. In addition to this evidence, defendant exhibited a consciousness of guilt, as he broke free from Bruess and fled when Bruess directed Kindred to secure the backpack. See *People v. Carter*, 2016 IL App (3d) 140196, ¶ 33. Also, during defendant's flight, Faw observed defendant reach toward his waistband as if he had a second weapon. Faw's testimony was largely corroborated by the video recorded from his patrol vehicle. Thus, the evidence also established that defendant possessed a second firearm. The second element, the existence of defendant's prior felony conviction, is not disputed.

¶ 31	In opposition to the State's evidence of possession, defendant testified that he never possessed the handgun and indicated that the pay stub fell out of his pocket. Defendant also said that he fled because he feared police officers after his friend had allegedly been killed by an officer. Defendant's explanation that he did not possess the handgun or backpack was less credible than the consistent testimony of the officers. Additionally, defendant's credibility was impeached by his prior felony convictions. Moreover, defendant's rationale for fleeing the scene is undermined by the fact that he initially approached Bruess and only fled when Bruess directed Kindred to secure the backpack that contained the handgun. Therefore, from our review, the evidence that defendant possessed a handgun was not closely balanced.

¶ 32	Defendant argues that the "forcible" felony and hearsay errors either individually or cumulatively warrant reversal under the second prong of the plain error rule. See *People v. Blue*,

189 Ill. 2d 99, 134 (2000) (finding the cumulative effect of several errors deprived defendant of his right to a fair trial).

¶ 33       Under the second prong of the plain error review, defendant must prove that the alleged error was so serious that it affected the fairness of the trial or undermined the integrity of the judicial process. *People v. Jackson*, 2020 IL 124112, ¶ 81. Prejudice is presumed because of the importance of the right involved. *Sebby*, 2017 IL 119445, ¶ 50. In *Thompson*, 238 Ill. 2d at 609, 613, our supreme court equated second prong plain errors with structural errors and provided the following examples of structural errors: "complete denial of counsel, trial before a biased judge, racial discrimination in the selection of a grand jury, denial of self-representation at trial, denial of a public trial, and a defective reasonable doubt instruction." Prior to *Thompson*, our supreme court explained that reversible second prong plain errors are "so prejudicial to the defendant that the trial court could not cure the error by sustaining an objection or instructing the jury to disregard the error." *People v. Herrett*, 137 Ill. 2d 195, 215 (1990).

¶ 34       In this case, both the hearsay and "forcible" felony errors could have been cured by sustaining an objection. Moreover, these errors are not of the same magnitude as the structural errors that the *Thompson* court explained would require reversal under the second prong. Accordingly, these errors are not individually subject to reversal under the second prong of the plain error analysis.

¶ 35       We next consider whether the cumulative effect of the hearsay and "forcible" felony errors require reversal under the second prong. Our analysis on this argument is guided by our supreme court's decision in *Blue*. The defendant in *Blue* was tried and convicted of the first degree murder of a police officer. *Blue*, 189 Ill. 2d at 103, 108-09. The supreme court held the circuit court erred in allowing the victim's bloody, brain-spattered police uniform to be displayed

12

on a mannequin during the testimony of several witnesses and sent to the jury room during deliberations, along with gloves so the jurors could handle the uniform. *Id.* at 121-26. The *Blue* court also found that error occurred during closing argument, where the State said that the victim's family needed to " 'hear' from the jury" and that the jury should send a message to the police that it supported them. *Id.* at 130-33. The supreme court found that the erroneous argument was compounded by the erroneous admission of irrelevant evidence regarding the victim's family, oath of office, and fact that the victim's police badge was retired and displayed in the " 'honored star case' " at the police department. *Id.* at 133. The *Blue* court also found that error occurred where the State made " 'testifying' objections." *Id.* at 136. The supreme court held the cumulative effect of these errors deprived the defendant of a fair trial and that reversal was required despite the overwhelming evidence of the defendant's guilt. *Id.* at 139-40.

¶ 36       The two errors at issue in this case are not nearly as egregious as the errors that deprived the defendant in *Blue* of his right to a fair trial. While the erroneous references to defendant's prior "forcible" felony painted defendant in a more negative light than necessary, they caused minimal prejudice as the nature of the UPWF charge required that the jury receive some evidence of defendant's prior felony conviction. See 720 ILCS 5/24-1.1(a) (West 2016). Moreover, the addition of the term "forcible" slightly increased the State's burden, as it required the State to prove not only did defendant have a prior felony conviction, but that felony was a "forcible" felony. Additionally, the hearsay testimony carried little prejudice, as it merely set up the officer's testimony as to why they were dispatched to the area and did not conclusively establish that defendant was the individual who possessed the handgun. Together, these errors had far less effect on defendant's trial than the more numerous and severe errors found to have cumulatively deprived the defendant in *Blue* of his right to a fair trial.

13

¶ 37                                                B. Sentencing

¶ 38          In the alternative, defendant argues the court violated his right to a fair sentencing

hearing where it improperly relied on the following three factors in aggravation: (1) defendant's

decision to exercise his constitutional right to a jury trial, (2) defendant's history of being a

victim to violent criminal conduct, and (3) the unsubstantiated allegations from a 2012 order of

protection case that was ultimately dismissed. The State concedes that the court erred in

considering the allegations derived from the dismissed order of protection case, but the State

argues the court did not err in considering the other two factors. The State contends defendant is

not entitled to a new sentencing hearing because the record fails to establish that the court

imposed a longer sentence due to the improper factor.

¶ 39          Generally, we review the imposition of a sentence for an abuse of discretion. *People v.
Abdelhadi*, 2012 IL App (2d) 111053, ¶ 8. However, the issue of whether the court considered an

improper factor in aggravation presents a question of law and is subject to *de novo* review. *Id.*

¶ 40          Defendant's fundamental right to liberty includes the right not to be sentenced based on

improper factors. *People v. Martin*, 119 Ill. 2d 453, 458 (1988) (citing *People v. Conover*, 84 Ill.

2d 400, 405 (1981) for the proposition that a sentence based on improper factors will not be

affirmed unless a reviewing court determines that the weight placed on the improper aggravating

factor was so insignificant that it did not lead to a greater sentence). Improper aggravating factors

include consideration of: a defendant's decision to exercise his right to a jury trial (see *People v.
Moriarty*, 25 Ill. 2d 565, 567 (1962)), the conduct of a person other than defendant absent

evidence that defendant was responsible for the other person's conduct (see *People v. McPhee*,

256 Ill. App. 3d 102, 114 (1993)), and pending charges or unsubstantiated allegations that

defendant committed criminal conduct (see *People v. Minter*, 2015 IL App (1st) 120958, ¶ 150).

The cause must be remanded for resentencing where we are unable to determine the weight the court gave to an improper factor. *People v. Sanders*, 2016 IL App (3d) 130511, ¶ 13. Remand is not required where the record establishes that the court placed insignificant weight upon the improper aggravating factor. *Id.*

¶ 41 We note that a sentence within the applicable sentencing range carries a presumption of validity. *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 12. Here, defendant was sentenced to 11 years' imprisonment, which is within the sentencing range of 3 to 14 years' imprisonment prescribed by section 24-1.1(e) of the Criminal Code of 2012 for a Class 2 felony UPWF charge. 720 ILCS 5/24-1.1(e) (West 2016).

¶ 42 Although defendant's sentence is within the applicable sentencing range, the presumption of validity is undermined by the court's express consideration of defendant's decision to exercise his right to a jury trial, history of being a victim of violent crime, and unsubstantiated allegations from the 2012 order of protection case. See *supra* ¶ 21. First, the court's comment that "[t]welve people from the community had to come and listen to you and listen to the police and listen to whoever you could get to testify," impliedly criticized defendant for exercising his right to a jury trial. Second, the court improperly considered, at some length, the evidence of defendant's history of being the victim of violent crime because there was no evidence to show that the acts of violence committed against defendant were brought on by defendant's conduct. Finally, the court erred in considering the unsubstantiated allegations from a 2012 order of protection case. To properly consider these allegations, the court needed to receive evidence proving the facts underlying the allegations. See *Minter*, 2015 IL App (1st) 120958, ¶ 150. Due to the court's references to, and at times, extensive discussion of these aggravating factors, we are unable to

15

say that the court placed little weight on these improper factors. Accordingly, we vacate defendant's sentence and remand for a new a sentencing hearing.

¶ 43                           III. CONCLUSION

¶ 44           The judgment of the circuit court of Peoria County is affirmed in part, vacated in part, and remanded with directions.

¶ 45           Affirmed in part, vacated in part.
¶ 46           Cause remanded with directions.